1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JULIE HAMILTON, et al.,

      Plaintiffs, individually,
and on behalf of all others
similarly situated,

      v.

TBC CORPORATION, et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV 17-1060-DMG (JEMx)

**ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; AND DEFENDANTS' MOTIONS TO STRIKE EXPERT OPINIONS [70, 79, 80]**

     This matter is before the Court on Plaintiffs Julie Hamilton, Lyle McLean, Sam Flowers, and Nestor Diaz's motion for class certification [Doc. # 70], and Defendants' motions to strike Plaintiffs' experts' opinions [Doc. ## 79, 80]. Having duly considered the parties' written submissions, the Court renders the following decision.

## I.
## PROCEDURAL BACKGROUND

     On June 9, 2017, Plaintiffs filed the operative First Amended Complaint ("FAC"), alleging that TBC Corporation ("TBC") and Dynamic Tire Corporation ("Dynamic") sold defective tires that were prone to tread separation. [Doc. # 21.] On April 27, 2018,

-1-

Plaintiffs filed a motion for class certification.  [Doc. # 70.]  On May 25, 2018, Dynamic filed two motions to strike ("MTS") Plaintiffs' experts' opinions.  [Doc. ## 79, 80.]  All three pending motions have since been fully briefed.  [Doc. ## 81, 82, 88, 90, 91.]

## II.

## FACTUAL BACKGROUND

### A.    The Parties

Dynamic is in the business of importing tires from overseas manufacturers.  Muise Decl. ¶ 2 [Doc. # 82-1].  Dynamic imports the Power King Towmax STR trailer brand tires ("STR tires"), which are primarily designed by Shandong Hengfeng, a Chinese company.[1] *Id.* ¶ 2; *see also* Dynamic's Answer to FAC ("Dynamic Answer") ¶ 8 [Doc. # 23].  The STR tires encompass a broad range of models with different construction and performance specifications.  Muise Decl. ¶ 2; *see also* Marble Decl. ¶ 20a [Doc. # 82-2].  After ensuring that the imported tires are compliant with applicable regulations, Dynamic sells the tires to TBC, which then markets and sells the tires to the public.  Muise Decl. ¶ 4; *see also* Bolton Decl., Ex. C [Doc. # 70-2].

Plaintiffs[2] are individual consumers who acquired and used the STR tires, which suffered from tread separation after use.  Tread separation is a hazardous condition in which the tire tread separates from the tire casing.  *See* FAC ¶ 19.

Hamilton is a California resident who purchased a trailer equipped with STR tires on July 26, 2012.  Hamilton Decl. ¶¶ 3, 4 [Doc. # 70-7].  On April 24, 2016, Hamilton experienced tread separation after using the STR tires for approximately 2,500-3000 miles. *Id.* ¶ 5.

---

[1] The "STR" designation refers to "Special Trailer," which indicates that the tires are rated for use with trailers, and the "R" refers to "radial."  (Plaintiffs' Opening Brief at n.1 [Doc. # 70-1].)

[2] Pursuant to the parties' joint stipulation, Jerad Hamilton and George Armstrong were dismissed as plaintiffs earlier in this action.  [Doc. ## 33, 69.]

In 2013, McLean, an Arizona resident, also purchased a trailer equipped with STR tires. McLean Decl. ¶ 3, 4 [Doc. # 70-8]. McLean experienced two tread separations: on March 30, 2016 in Tennessee (*id.* ¶ 5) and on October 3, 2016 in Delaware (*id.* ¶ 6).

On August 7, 2014, Flowers, a Colorado resident, purchased a trailer equipped with STR tires. Flowers Decl. ¶¶ 3, 4 [Doc. # 70-10]. In May 2015, Flowers experienced two tread separations in Florida and Missouri with less than 3,000 miles traveled on the tires. *Id.* ¶¶ 5, 6. Flowers also purchased replacement STR tires. Def. Flowers Depo. at 92:1–24 [Doc. # 82-12].

Diaz, a Florida resident, purchased a trailer equipped with STR tires on June 15, 2013. Diaz Decl. ¶¶ 3, 4 [Doc. # 70-9]. Twice in March 2015, Diaz experienced tread separations with less than 1,000 miles traveled on the tires. *Id.* ¶¶ 5, 6. In April 2017, Diaz experienced a third tread separation after driving less than 1,500 miles on the tires. *Id.* ¶ 7.

**B.     Plaintiff's Allegations and Proposed Classes**

Plaintiffs allege that the STR tires are defective and have a high rate of failure, particularly tread separation, even under normal operating conditions. FAC ¶ 19. Plaintiffs contend that Dynamic and TBC knew that the STR tires were defective, but failed to disclose that fact. *Id.* ¶ 21. As a result, Plaintiffs allege putative class claims for (1) fraud; (2) unjust enrichment; (3) breach of express and implied warranty in violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; (4) negligent failure to recall or retrofit; and (5) violation of California, Arizona, Colorado, and Florida's consumer protection statutes.[3] *See generally*, *id.*

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move to certify a **Nationwide Class** of all persons in the United States who purchased or acquired a STR tire from January 1, 2011 to the present. Mot. at 6.

---

[3] On April 25, 2018, Plaintiffs dismissed their claims under New York law pursuant to a joint stipulation. [Doc. # 69.]

Alternatively, pursuant to Federal Rule of Civil Procedure 23(c)(4), Plaintiffs move to certify a **Nationwide Liability-Only Class** of all persons in the United States who purchased or acquired a STR tire from January 1, 2011 to the present if the Court finds that damages cannot be proven on a class-wide basis.  Mot. at 6–7.

In the alternative, Plaintiffs move to certify state classes of all persons residing in California, Arizona, Colorado, and Florida who purchased or acquired a STR tire from January 1, 2011 to the present for violations of their respective states' laws.  Mot. at 7.

### III.

### MOTIONS TO STRIKE

Federal Rule of Evidence 702 allows expert testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Rule 702 "require[s] that the judge apply [her] gatekeeping role . . . to all forms of expert testimony, not just scientific testimony" and "judges are entitled to broad discretion when discharging their gatekeeping function."  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal quotation omitted).

In the context of a class certification motion, however, it is "an abuse of discretion where a 'district court limited its analysis of whether' class plaintiffs satisfied a Rule 23 requirement 'to a determination of whether Plaintiffs' evidence on that point was admissible.'"  *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 631 (9th Cir. 2018) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  Because a class certification decision is preliminary and uncertain, "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification."  *Id.* at 632.  Instead, a district court should "consider material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement."  *Id.* (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).  For instance, "[t]he court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence."  *Id.* at 634.

-4-

1    But a district court should not "dispense with the standards of admissibility entirely"
2    and should still "evaluate admissibility under the standard set forth in *Daubert*." *Id.* at
3    633–34. Although "admissibility must not be dispositive," the court must consider whether
4    the expert opinion is ultimately admissible when weighing that evidence at the class
5    certification stage. *Id.* at 634.

6    Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its
7    progeny, a court must

8        assess [an expert's] reasoning or methodology, using as appropriate such
9        criteria as testability, publication in peer reviewed literature, and general
10       acceptance, but the inquiry is a flexible one.  Shaky but admissible evidence
11       is to be attacked by cross examination, contrary evidence, and attention to the
12       burden of proof . . . Expert opinion testimony is relevant if the knowledge
13       underlying it has a valid connection to the pertinent inquiry.  And it is reliable
14       if the knowledge underlying it has a reliable basis in the knowledge and
15       experience of the relevant discipline.

16   *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013)
17   (internal quotations and citations omitted).

18   Here, Plaintiffs submitted declarations by two experts:  Kenneth Pearl and Elizabeth
19   Howlett. *See* Pearl Decl. [Doc. # 70-4]; Howlett Decl. [Doc. # 70-3].  Pearl explains how
20   tread separations may occur and opines that "there can be no reasonable question that a
21   tread separation of a tire constitutes a 'defect'." Pearl Decl. ¶¶ 5–6. Howlett offers a model
22   for calculating damages using a "choice-based conjoint analysis."  Howlett Decl. ¶ 25.
23   Dynamic contends that both declarations should be stricken or disregarded because neither
24   expert used reliable methodology and their opinions are not analytically sound.  *See*
25   *generally*, Mot. to Strike Pearl Decl. ("MTS Pearl") [Doc. # 79-1]; Mot. to Strike Howlett
26   Decl. ("MTS Howlett") [Doc. # 80-1].  The Court will assess each declaration separately.

27   Pearl's declaration contains noticeable deficiencies.  Although Pearl appears to be a
28   well-qualified expert, he offers almost no analysis to support his conclusory opinion that

"[t]here can be no reasonable question that a tread separation of a tire constitutes a 'defect.'"  Pearl Decl. ¶ 6.  Pearl does not make clear why the tread separations in this case were the result of a design or manufacturing defect, and not other potential factors.  In fact, it is not even clear from the declaration whether Pearl has inspected or has experience with the tires in question.  Although Pearl cites to and relies upon a National Highway Traffic Safety Administration ("NHTSA") report where the agency rejected "Firestone's contention that a tread separation is not a defect[,]" that report specifically discusses Firestone's tires, not the STR tires at issue here.  *Id.*  Pearl does not include any analysis from which the Court can ascertain that the STR tires are comparable to the Firestone tires which were the subject of the NHTSA's report.  Moreover, the NHTSA did not conclude that *all* tread separations are the result of defects, but instead recognized that "such factors as road hazards and severe under-inflation" can contribute to tread separations.  *Id.*  What saves the opinion from being stricken is that aspect of the declaration that focuses on the fundamental principle, apparently relied upon by the NHTSA for its defect findings, that "the fatigue life of the tire should exceed the tread life."  *Id*. ¶ 7.  Here, Plaintiffs experienced tread separations after relatively ordinary and low mileage usage.  In the absence of any evidence of road hazards or severe under-inflation, a reasonable inference can be drawn from Pearl's declaration that the tread separations that Plaintiffs experienced resulted from a defect.  Keeping in mind the Ninth Circuit's admonition that district courts should not limit its certification analysis to Plaintiffs' evidence and that "shaky" but admissible evidence should be attacked through cross-examination, contrary evidence, and application of the burden of proof, the Court declines to strike Pearl's opinion at this stage of the proceedings.

In contrast, Howlett's declaration closely conforms to the requirements of *Daubert*.  Howlett is well-qualified and has demonstrated that her proposed model for calculating damages has a strong basis in widely accepted methods.  Specifically, Howlett explained that a "choice-based conjoint analysis" is often used in market research and has been used by other courts in the past.  *See* Howlett Decl. ¶¶ 26–27.  Howlett's model seeks to

determine how much value consumers assign to particular attributes of a product. *Id.* ¶ 29. Then, Howlett's model attempts to determine the percentage above or below the average price consumers are willing to pay for a particular attribute using a large amount of data regarding consumer choices. *Id.* ¶ 32. In short, Howlett adequately explained how a choice-based conjoint analysis could hypothetically be applied to the instant case to determine damages, given Plaintiffs' theory of liability. *Id.* ¶¶ 31–32. *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013) (plaintiffs must present a damages model capable of measuring class-wide damages consistent with their theory of liability).

Dynamic argues that Howlett's model relies on erroneous factual assumptions, such as whether putative class members in fact paid a premium for STR tires or whether the tread separations were caused by a defect or from other external causes. *See, e.g.*, MTS Howlett at 8, 15. These factual disputes, however, go to the merits of Plaintiffs' class claims, not whether Plaintiffs have presented a damages model consistent with his liability case. Howlett has presented a reasonable model for calculating damages on a class-wide basis. Moreover, the Ninth Circuit has warned that courts should not "transform[] a preliminary stage into an evidentiary shooting match . . . ." *Sali*, 889 F.3d at 631. The fact that Howlett's conjoint analysis may rely on assumptions that ultimately may be proven false on the merits does not automatically render her methodology and conclusions unreliable. The Court concludes that Howlett's thorough explanation of her methodology and her professional background satisfy *Daubert* and Rule 702.

Accordingly, Dynamic's motions to strike are **DENIED**.

## IV.

## LEGAL STANDARD FOR MOTION FOR CLASS CERTIFICATION

**A.   Substantive Requirements of Rule 23**

A district court has broad discretion in making a class certification determination under Rule 23. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (district courts "have broad power and discretion

vested in them by Fed. Rule Civ. Proc. 23"). Nonetheless, a court must exercise its discretion "within the framework of Rule 23." *Navellier*, 262 F.3d at 941.

The following prerequisites must be met before a court may certify a class under Rule 23:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks omitted).

If the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(3) if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). In order to meet the superiority requirement, a class action must be superior to any other methods of resolving the case. Fed. R. Civ. P. 23(b)(3).

**B.      Burdens and Standard of Proof**

"The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards*, 798 F.3d at 1177; *see also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 321 (C.D. Cal. 2015) ("More than a pleading standard, Rule 23 requires the party seeking class certification to affirmatively demonstrate compliance with the rule[.]") (internal quotation marks and alterations omitted).  Certification is properly granted only after "a rigorous analysis [determining] that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350–51.

Neither the Supreme Court nor the Ninth Circuit has definitively set forth a specific standard of proof for Rule 23 determinations. *See Dukes*, 564 U.S. at 350–51 (setting forth a "rigorous analysis" requirement without discussing a specific standard of proof); *Edwards*, 798 F.3d at 1178 (Rule 23 determinations "will inevitably touch upon the merits of plaintiffs' underlying . . . claims" but cautioning that a class certification should not become a "mini-trial on the merits") (internal quotation marks omitted).  Rather, the Ninth Circuit has stated that, "[w]hile some evaluation of the merits frequently 'cannot be helped' in evaluating [certifiability], that likelihood of overlap with the merits is 'no license to engage in free-ranging merits inquiries at the certification stage.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013)).  "[M]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (quoting *Amgen*, 133 S. Ct. at 1194–95) (emphasis in original).

## V.
## DISCUSSION

Plaintiffs assert that their proposed nationwide class and alternative statewide classes satisfy the elements of Rule 23(a) and Rule 23(b)(3). *See* Mot. at 8–23.  Defendants argue that the Court should not certify any of the proposed classes. *See* Opp'n at 1.  The Court addresses each Rule 23 factor below.

**A.   Numerosity**

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25–30 members." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). "In determining whether numerosity is satisfied, the court may consider reasonable inferences drawn from the facts before it. *See Gay v. Waiters' & Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Here, TBC admits that it sells STR tires in many states throughout the United States and advertises the tires nationwide. *See* TBC Amended Answer to FAC ("TBC Answer") ¶ 7 [Doc. # 25]; *see also* Bolton Decl. ¶¶ 12–14. From these admissions, the Court infers that the Class is sufficiently numerous to satisfy numerosity. In any event, Defendants do not argue that any of the proposed or alternative classes fail to meet the numerosity requirement.

Thus, Plaintiffs have satisfied their burden of establishing numerosity with respect to each of the putative classes.

**B.   Commonality**

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law. *See id.* at 350. Rather, the putative class members' claims "must depend upon a common contention" that is "of such nature that is capable of classwide resolution—which means that determination

if its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.*

Plaintiffs' putative classes easily satisfy the commonality requirement because each of their claims involve the same alleged defect, covered by the same warranty. In particular, Plaintiffs' allegations set forth the following common questions: (1) whether the STR tires contain a defect; (2) whether Defendants were aware of this defect; (3) whether Defendants concealed this defect; and (4) whether Defendants are required to recall or replace the STR tires. *See Wolin v. Jaguar Land Rover N. Am., LLC.*, 617 F.3d 1168, 1172 (9th Cir. 2010).

Like the numerosity requirement, Defendants do not meaningfully dispute the existence of common questions. Defendants superficially argue that "Plaintiffs have failed to establish commonality or predominance." Opp'n at 5. Defendants' specific arguments, however, concern the predominance requirement of Rule 23(b)(3) (*see, e.g.*, *id.* at 7) or are simply challenges to the merits of Plaintiffs' claims (*see, e.g.*, *id.* at 5). While the commonality and predominance inquiries share "substantial overlap," the two are not the same, with the latter test being "far more demanding." *Wolin*, 617 F.3d at 1172.

Because each putative class's claims turn on the existence of a defect in the STR tires, Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

## C.   Typicality

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon*, 976 F.2d at 508). The typicality standard under Rule 23(a)(3) is "permissive": "representative claims are 'typical' if they are reasonably

coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect."). However, the existence of unique defenses that "threaten to become the focus of the litigation" can defeat a showing of typicality. *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

On the surface, the named Plaintiffs appear typical of their class. Each named Plaintiff was harmed when they acquired purportedly defective tires prone to tread separation—the precise injury that is the focus of their class action. Although the circumstances under which each named Plaintiff discovered the tread separations may differ, "proof of the manifestation of a defect is not a prerequisite to class certification." *Wolin*, 671 F.3d at 1173.

All named Plaintiffs, however, are subject to unique defenses as to one or more claims that pose a substantial barrier to satisfying the typicality requirement. Specifically, the named Plaintiffs did not rely on Defendants' representations or omissions, and they are not in vertical privity with Defendants. Defendants also claim that two of the named Plaintiffs' claims are potentially subject to the statute of limitations. Defendants also raise a standing challenge and an individual challenge to typicality. *See* Opp'n at 22–24. The Court will first address standing, then discuss each of the other defenses *seriatim*.

### 1.   Standing to Assert Claims of Putative Class Members from Other States

Defendants argue that Plaintiffs are not typical of the class because they lack standing to assert state law claims from states in which they do not reside or did not purchase their tires. *See* Opp'n at 21. Because claims under the MMWA "stand or fall with [Plaintiffs'] express and implied warranty claims under state law" (*Clemens*, 534 F.3d at 1022 & n.3), Defendants contend that Plaintiffs lack standing and are therefore atypical of the class for their nationwide claims.

-12-

The Supreme Court has recognized, however, that, at least in some cases, courts may address class certification before resolving standing questions. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997). Some courts have interpreted *Ortiz* and *Amchem* narrowly and resolved standing before class certification. *See, e.g. Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 531 (S.D.N.Y. 2008); *In re CarrierIQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015). Other courts have reasoned that class certification should precede standing analyses because a properly certified class "acquire[s] a legal status separate from the representative." *Bates v. UPS*, 511 F.3d 974, 987 (2007); *see also Payton v. Cnty of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). In any case, the Ninth Circuit has not definitively resolved this question. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113–14 (9th Cir. 2013) (declining to "reach the more difficult chicken-and-egg question of whether class certification should be decided before standing.").

The Court declines to reach standing at this time. As explained in more detail below, Plaintiffs' proposed nationwide class suffers from other serious infirmities—namely, the typicality and predominance requirements of Rule 23(a) and (b)(3). It is therefore unnecessary for the Court to delve into questions of standing at this time.

## 2.    Reliance

The first substantive barrier to named Plaintiffs' typicality is reliance. Each of the named Plaintiffs testified that they have not seen, heard, or were even aware of any advertisements or marketing materials for the STR tires. *See* Markowitz Decl., Ex. D ("Def. Hamilton Depo.") at 135:3–13 [Doc. # 82-9]; Ex. E ("Def. McLean Depo.") at 67:9–11 [Doc. # 82-10]; Ex. F ("Def. Diaz Depo.") at 94:21–95:25 [Doc. # 82-11]; Def. Flowers Depo. at 161:25–162:7. Indeed, some of the named Plaintiffs also testified that they had no knowledge regarding the STR tires and made no attempt to learn more about the tires before their purchase. *See, e.g.*, Def. McLean Depo. at 67:16–68:5. Further, some of the named Plaintiffs also testified that they had never seen any written warranty. *See, e.g.*, Def. Hamilton Depo. at 118:22–119:8.

-13-

Because reliance is a required element for some of their claims, the named Plaintiffs are atypical of the class with respect to those claims. The Court discusses the relevant claims in detail below.

### a. Fraud

Under California law, an essential element for a fraudulent omission claim is actual reliance. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* The "plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Id.* In other words, to prove a claim for fraudulent omission, a plaintiff must prove two sub-elements: (1) the plaintiff would have been aware of the omitted information had it been disclosed and (2) he would have behaved differently. *Id.* at 1225–26 (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993)).

The second sub-element is presumed when the omission is material. *Id.* at 1225. "Alleged defects that create 'unreasonable safety risks' are considered material." *Id.* (collecting cases). Defendants do not dispute that the alleged tire separation defect would be material nor could they. A reasonable factfinder could infer that a tire prone to tread separation poses an unreasonable safety risk, such that the nondisclosure of the safety risk impacted Plaintiffs purchasing decision. Although Defendants' expert opined that proper handling of the tires and routine monitoring could prevent safety problems, the Ninth Circuit has rejected similar arguments. *See id.* at 1226.

Nonetheless, as to the first sub-element—whether Plaintiffs would have been aware of the omitted information had it been disclosed—the named Plaintiffs' testimony demonstrates that Defendants likely will have unique defenses as to not just Hamilton, the proposed California class representative, but each of the named Plaintiffs. A comparison of the evidence Plaintiffs presented here with that in *Daniel* illustrates the point. In *Daniel*, the class plaintiffs presented evidence that they "interacted with and received information

from sales representatives . . . regarding the 'characteristics,' 'benefits,' and 'quality' . . . of the Ford Focus . . . ." *Id.* at 1226–27.  Here, however, there is no indication that any of the named Plaintiffs were provided any information relating to the tires when they purchased the trailers—after all, the trailers were the main focus of their purchase, not the tires.  Indeed, some of the named Plaintiffs acknowledged that they did not make any attempt to learn more about the tires.  McLean, for example, testified that he had no input into the type of tires that would be included on his trailer and did not even ask his dealer about the tires.  *See* Def. McLean Depo. at 65:16–24.  Similarly, all of the named Plaintiffs stated that it was not until after their purchase that they thought to learn about the tires that came with their trailer.  *See, e.g.*, Def. Hamilton Depo. at 134:9–12; 135:3–9.

Although reliance is often not the "basis for denial of class certification," the failure to show reliance can defeat typicality in "unique situation[s]."  *Hanon*, 976 F.2d at 509; *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 975 (C.D. Cal. 2015) (typicality may not be met where "the named plaintiffs' claims were subject to the unique defense that they did *not* rely on the [advertisement]").  Here, whether the named Plaintiffs would have been aware of the omitted material had it been disclosed is "subject to serious dispute, not typical of defenses which could be raised against other members of the proposed class." *Id.*

### b.      Breach of Express Warranty

The MMWA allows consumers to enforce implied, limited, and express warranties in federal court and provides remedies for breach.  *See* 15 U.S.C. § 2310(d).  For the breach of full warranties, consumers may recover for a manufacturer's failure to comply with federal minimum warranty standards.  *See* 15 U.S.C. § 2304.  Claims based on limited or implied warranties, however, "hinge on the state law warranty claims."  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008) (citing *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004); *see also Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 919 & n.4 (9th Cir. 2005).

Plaintiffs broadly contend that federal law allows the Court to certify a nationwide class for breach of express warranty. As noted above, however, claims for a breach of a limited warranty under the MMWA "stand or fall with [Plaintiffs'] express and implied warranty claims under state law." *Clemens*, 534 F.3d at 1022 & n.3. The FAC does not contain any allegations suggesting that Plaintiffs obtained a full express warranty from Defendants. Plaintiffs have only presented limited express warranties or implied warranties. Thus, Plaintiffs' express warranty claims rely on state law and their proposed nationwide class cannot be certified on the basis of Section 2304 alone.

Plaintiffs fail to specify which state's laws should be applied to their nationwide warranty claims and, as demonstrated by Defendants' appendix of legal authority (*see* Markowitz Decl., Ex. B [Doc. # 82-7]), there is a wide range of applicable standards.[4] *See Darisse v. Nest Labs, Inc.*, No. CV 14-01363-BLF, 2016 WL 4385849 at *11–12 (N.D. Cal. Aug. 15, 2016) (collecting cases and listing differences in breach of express warranty requirements across jurisdictions). Some states require a showing of reliance to establish an express warranty, while others do not. *See, e.g.*, *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1226–28 (2010) (breach of express warranty claim does not require proof of reliance on specific promises by the seller); *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 645 (10th Cir. 1991) (reliance is not required for a breach of express warranty claim under Colorado law); *but see Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1334 (C.D. Cal. 2013) (distinguishing *Weinstat* and holding that reliance is required when buyers are not in vertical privity with the seller); *Royal Typewriter Co., Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) (under Florida law, "[t]he buyer's knowledge or absence of reliance will negate the existence of an express warranty."). Thus, whether the named Plaintiffs are typical depends in large part on the state law that forms the basis of their MMWA claim.

---

[4] The fact that Plaintiffs' MMWA claim implicates such a wide range of state law standards raises significant predominance concerns. The Court addresses those issues, *infra*.

The fact that reliance is sometimes a necessary element of a breach of express warranty claim suggests that the named Plaintiffs are not typical of their class because they have not demonstrated reliance on any specific promise made by Defendants.  In any case, it is Plaintiffs' burden to establish that each of the Rule 23(a) requirements are met and they have failed to do so here.  *See Edwards*, 798 F.3d at 1177.

### c.    State Consumer Protection Statutes

Reliance is also a necessary element for some of Plaintiffs' claims under state consumer protection statutes.  Defendants concede that reliance is not required to state a claim under Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq.* and, accordingly, that Diaz is a typical plaintiff for the putative Florida class claim under that statute.  *See* Opp'n at 21 n.36.  As for the remaining alternative state-law consumer protection statutes, the Court analyzes the reliance requirement for each statute below.

### i.    Arizona

Plaintiffs bring a claim under Arizona's Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. §§ 44-1521 *et seq.*  *See* FAC ¶¶ 152–160.  Under the ACFA, plaintiffs must prove reliance.  *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 591 (Ariz. Ct. App. 1979).  If their claim is based on an omission, plaintiffs must prove that the omission was "material."  *See* Ariz. Rev. Stat. § 44-1521(A); *Demaree v. Wal-Mart Stores, Inc.*, 511 Fed. Appx. 660, 661 (9th Cir. 2013) (citing *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610 (Ariz. Ct. App. 2000).  The plaintiff's reliance does not need to be reasonable, but it must be based on the plaintiff's actual exposure to the omission.  *Parks*, 121 Ariz. at 591.  In other words, plaintiffs who do not actually rely on a false statement or material omission have no claim under the ACFA.  *Kuehn v. Stanley*, 208 Ariz. 124, 130 (Ariz. Ct. App. 2004).

Here, McLean is the only named Plaintiff representing the alternative Arizona class.  McLean testified that when he was in the process of purchasing his trailer, he had no discussion relating to the STR tires.  Def. McLean Depo. at 65:16–24.  McLean did not know that his trailer came equipped with STR tires when he purchased the trailer and would not have been able to tell what kind of tires were on his trailer after his purchase.  *Id.* at

65:25–66:12.  McLean also had no input on the brand, size, or model of the tires with which his trailer would be equipped when he purchased the vehicle.  *Id.* at 67:16–20.  In short, Plaintiffs provided no evidence that McLean relied on Defendants' representations or omissions when he acquired the STR tires.

### ii.    California

Plaintiffs bring three claims under California's consumer protection statutes:  the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; the Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200 *et seq.*; and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770(a).  To bring a CLRA claim, a plaintiff must "'show not only that a defendant's conduct was deceptive but that the deception caused [him] harm.'"  *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009)).  In other words, a representative CLRA plaintiff must show that the misrepresentation was material and he relied on that representation.  *See Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 221 (2012) ("With respect to common law fraud and the CLRA claims . . . actual reliance must be established for an award of damages.").

Similarly, fraud-based UCL claims and FAL claims require the named Plaintiff to actually rely on Defendants' allegedly deceptive or misleading statements.  *Gutierrez v. Wells Fargo Bank. NA*, 704 F.3d 712, 728 (9th Cir. 2012) (citing *In re Tobacco II Cases*, 46 Cal. 4th at 306).  To meet the reliance requirement, the allegedly deceptive or misleading statement need not be the only cause for plaintiffs' purchase of the products, but it must be "an immediate cause" of their purchase.  *In re Tobacco II Cases*, 46 Cal. 4th at 326.

As Plaintiffs' California claims are based on the same law and facts as their nationwide fraud claim, Plaintiffs fail to demonstrate typicality here as well.  Specifically, Hamilton is the only named Plaintiff representing the alternative California class.  Hamilton testified that she did not have any discussion about the STR tires that would be installed on her trailer before purchasing her trailer.  Def. Hamilton Depo. at 134:1–5.  In

-18-

fact, she had never heard of the STR tires before her purchase, nor had she ever seen any advertisements or marketing materials for the tires. *Id.* at 134:9–12; 135:3–9. Plaintiffs provided no evidence that Defendant's failure to tell Hamilton that the STR tires contained a tread separation defect was an "immediate cause" of her trailer purchase.

### iii. Colorado

Plaintiffs bring a claim under the Colorado Consumer Protection Act ("CCPA"), Col. Rev. Stat. § 6-1-101 *et seq.* The CCPA permits actions by "any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in section 6-1-105 or 6-1-105.5." Col. Rev. Stat. § 6-1-113(1).

Colorado courts have liberally construed the CCPA to serve its broad purpose and scope. *Hall v. Walter*, 969 P.2d 224, 230 (Colo. Sup. Ct. 1998). In so doing, the Colorado Supreme Court has held that the CCPA is not limited to actual or potential consumers—*i.e.*, people "who [have] been exposed to [the defendant's] violations and either purchases merchandise or undertakes other activities in reliance on the advertisement." *Id.* at 231 (internal quotation marks omitted). Rather, the CCPA permits actions by "any person" who "establishes (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Id.* at 235. In other words, although "[r]eliance often provides the key causal link between a consumer's injury and a defendant's deceptive practice," reliance is not required. *Hall*, 969 P.2d at 237; *see also Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011).

In contrast to Arizona and California, reliance does not appear to be an element of a claim under Colorado's consumer protection statute. Rather, plaintiffs need only prove

causation.  Thus, Flowers—the named Plaintiff for the alternative Colorado class—need not demonstrate reliance to satisfy typicality.

### 3.    Vertical Privity

The second substantive barrier to typicality is the privity requirement for breach of express warranty.  Arizona, California, and Florida all require vertical privity between the warrantor and the purchaser of the product in order to succeed on a claim for breach of express and implied warranties.  *See Flory v. Silvercrest Indus.*, 129, Ariz. 574, 581 (1981) (express warranty under Arizona law requires privity); *Plagens v. Nat'l RV Holdings, Inc.*, 328 F. Supp. 2d 1068, 1074 (D. Ariz. 2004) (implied warranty under Arizona law requires privity); *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954) ("The general rule [in California] is that privity of contract is required in an action for breach of either express or implied warranty . . ."); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 920 (N.D. Cal. 2018) (Florida courts split over whether express warranty requires vertical privity); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. App. 2005) ("plaintiff[s] cannot recover economic losses for breach of implied warranty in the absence of privity.")

Here, none of the named Plaintiffs are in vertical privity with Defendants.[5]  Each of the named Plaintiffs acquired their STR tires from third parties when they purchased their trailers.  *See* Hamilton Decl. ¶ 4; McLean Decl. ¶ 4; Flowers Decl. ¶ 4; Diaz Decl. ¶ 4.

### 4.    Statute of Limitations

According to Defendants two of the named Plaintiffs'—Hamilton and McLean—are subject to unique defenses due to the statute of limitations.  Here, Hamilton's claim is potentially time-barred because Hamilton purchased her trailer (and thus acquired the STR tires) on July 26, 2012.  *See* Opp'n at 23.  The same is true for McLean, who purchased his trailer in 2013.[6]  *See id.* at 24.

---

[5] Vertical privity also presents a predominance issue as discussed *infra*.

[6] Neither Flowers nor Diaz have a limitations period problem.  Flowers' claims fall within the three-year statute of limitations under Colorado law.  *See Hersh Cos. v. Highline Village Ass'ns*, 30 P.3d 221, 225-26 (Colo. Sup. Ct. 2001); Colo. Rev. Stat. § 4-2-725.  Diaz's claims are within the four-year

Under California law, fraud and negligence claims are governed by a three-year statute of limitations.  Cal. Civ. Proc. Code § 338(d).  Violations of the FAL and CLRA are also governed by a three-year limitations period, counting from "the date of the commission of such method, act, or practice.  Cal. Civ. Code § 1783.  UCL claims are subject to a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208.  Finally, implied warranty claims are also subject to a four-year statute of limitations.  Cal. Com. Code § 2725.  All of the limitations periods begin to run upon "the occurrence of the last element essential to the cause of action" unless equitable tolling applies.  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (quotations omitted).

Under Arizona law, violations of the ACFA are subject to a one-year statute of limitations.  Ariz. Rev. Stat. § 12-541(53).  The limitations period begins to run when the consumer knows or should know that "he has been injured, he knows the identity of the maker of the product, and he knows that the product had a causal relation to his injury."  *Lawhorn v. L.B.J. Inst. Supply*, 159 Ariz. 179, 183 (Ariz. Ct. App. 1988).  In other words, "the cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation."  *Id.*

Here, Hamilton, a California resident, purchased her trailer (and acquired the STR tires) on July 26, 2012.  Hamilton Decl. ¶ 4.  Based on the four-year limitations period for UCL claims, the statutes of limitation on all of her claims had run by July 26, 2016.  Plaintiffs did not bring this lawsuit until February 9, 2017.  Thus, Hamilton's claims are time-barred unless equitable tolling applies.

McLean, an Arizona resident, purchased his trailer in 2013.  Applying the one-year limitations period, McLean's fraud and negligence claims therefore ran by 2016 and are similarly time-barred absent tolling.

---

limitations period under Florida law.  *See R.A. Jones & Sons, Inc. v. Holman*, 470 So. 2d 60, 65-66 (Fla. Ct. App. 1985).

Plaintiffs contend that the cause of action did not accrue until the tread separations occurred in 2016. Plaintiffs' theory of the case, however, is that the STR tires were defective at the time of purchase. *See* Mot. at 12 ("Plaintiffs' theory of the case is that they were harmed at the time of sale or acquisition of the Class Tires"). Therefore, Plaintiffs were allegedly injured when they acquired the tires.

Hamilton and McLean's claims could (and likely would) survive because both California and Arizona apply the discovery rule and toll limitations periods until the plaintiffs have discovered the harm. *See, e.g., Aryeh*, 55 Cal. 4th at 1191; *Lawhorn*, 159 Ariz. at 183. And there is no reasonable dispute that Hamilton and McLean discovered the purported defects for the first time when they suffered tread separations. Although the question of whether the discovery rule applies may be an issue unique to Hamilton and McLean, typicality fails when their claims may be subject to unique defenses that could become a *significant* focus of the litigation. *See Hanon*, 976 F.2d at 508. That is not the case here. Plaintiffs' claims are based on Defendants' alleged concealment of a defect that cannot be reasonably discovered until the tire fails. It is unlikely that the discovery rule would be a particularly contentious or difficult focus of the litigation as to these particular Plaintiffs—thus, it is not an issue of typicality, though it may raise an issue as to predominance. *See Hanlon*, 150 F.3d at 1020 (typicality was met where the proposed class had a "narrow focus . . . to obtain a defect-free [product], or receive adequate non-personal injury compensation damages."); *Schramm v. JP Morgan Chase Bank, N.A.*, No. 09-09442-JAK (FFMx), 2011 WL 5034663, at *10-11 (C.D. Cal. 2011); *but see, e.g., Quezada v. Loan Ctr. of Cal., Inc.*, No. CIV. 2.08-00177 WBS KJM, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009) ; *Arabian v. Sony Elecs., Inc.*, No. 05-cv-1741 WGH (NLS), 2007 WL 627977, at *5–6 (S.D. Cal. Feb. 22, 2007).

### 4. Flowers

Defendants contend that Flowers is atypical because he did not personally purchase the STR tires or a vehicle equipped with the tires and therefore lacks standing. The Court rejects this contention. Flowers purchased replacement tires after he experienced a tread

separation.  Flower Depo. at 92:1–24.  This is an actual and concrete injury caused by the purported defect in Defendants' tires.  *See Lujan v. Defenders of Wildlife*, 504, 555, 560 (1992) ("the irreducible constitutional minimum of standing" requires an "injury in fact" that is "concrete and particularized" and "actual or imminent" that is "fairly . . . trace[able] to the challenged action of the defendant").  Flowers has established standing and is not atypical of the class.

### 5.      Summary of Typicality

In sum, the named Plaintiffs have failed to demonstrate that they are typical of their proposed nationwide class in part due to their lack of reliance on Defendants' representations.  The lack of reliance is a unique, substantive defense to their nationwide fraud and breach of express warranty claims, as well as their state class claims under Arizona and California's consumer protection statutes.  Named Plaintiffs also fail to demonstrate vertical privity.  Vertical privity is a unique, substantive defense to their breach of express and implied warranty claims for all claims based on Arizona, California, and Florida law.

When considered in tandem, these unique defenses pose a significant danger that the class would be adversely affected by the amount of time the named Plaintiffs would have to devote to their respective defenses.  Accordingly, the Court finds the following:

- Named Plaintiffs are not typical of the nationwide class as to their claims for fraud, breach of express warranty, and breach of implied warranty;
- McLean is not typical of the Arizona class;
- Hamilton is not typical of the California class;
- Flowers is typical of the Colorado class as to the Colorado state law claims ; and
- Diaz is typical of the Florida class as to the FDUPTA claim.

### D.      Adequacy

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(a)(4) presents two questions:  "(1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs attest that they are prepared to assist their attorneys in "vigorously prosecuting" the action and "will protect the interests of the Class." *See, e.g.*, Diaz Decl. ¶ 11. They also "do not have any conflicts of interest with any other members of the Proposed Class." *Id.*

Furthermore, the declarations of Plaintiff's attorneys indicate that they have extensive experience and knowledge with product liability class actions and have the necessary resources to prosecute this action. Bolton Decl. ¶¶ 5–10.

Defendants raise only one challenge as to adequacy. Defendants contend that Flowers is not an adequate representative because he failed multiple times to appear for properly noticed depositions and it was not until the Court ordered Flowers to appear for a deposition did the deposition occur. *See* Sanctions Order at 2–3 [Doc. # 64.][7] Indeed, the Court ultimately sanctioned Flowers and counsel in the amount of $8,123.93. *See id.* at 9. Although Flowers' behavior is deeply concerning, Flowers ultimately appeared for his deposition and has no conflicts of interest. Moreover, as the Court indicated in its Sanctions Order, Defendants suffered no prejudice due to Flowers's delay and monetary sanctions were an adequate remedy. *See id.* at 8. Furthermore, the Magistrate Judge declined to impose terminating sanctions as a remedy for Flowers's failure to show up at his deposition—it would be inconsistent for the Court to deny class certification solely on that basis. *See id.* Consequently, the Court concludes that Plaintiffs and their counsel satisfy the requirement of adequate class representation. The Court expects, however, that there will be no further repetition of the type of conduct that resulted in the imposition of sanctions.

_____

[7] Plaintiffs have filed a pending Motion for Reconsideration of the Sanctions Order. [Doc. # 71.]

**E.    Rule 23(b)(3)**

**1.    Predominance**

There is substantial overlap between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests, but "the [Rule] 23(b)(3) test is 'far more demanding.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "[T]he common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation marks, brackets, and alteration omitted).  The "focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks omitted).

Although the Court finds typicality lacking for most of Plaintiffs' class claims, predominance also precludes certification for Plaintiffs' claims for their putative nationwide, Arizona, California, and Florida (except FDUPTA) classes.  Predominance is met, however, with respect to Plaintiffs' Colorado class claims and the Florida FDUTPA claim.  The Court explains in detail below.

**a.    Certification of a Nationwide Class**

As a threshold matter, a class action proponent seeking to certify a nationwide class bears the initial burden to determine the controlling substantive law.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).  "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Id.*  In California, plaintiffs must show that "California has 'significant contact or significant aggregation of contacts to the claims of each class member." *Id.* (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).  "Such a showing is necessary to ensure that application of California law is constitutional." *Id.* at 589–90.  "Once the class action proponent makes this showing, the burden shifts to the other side to

demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Id.* at 590 (quoting *Wash. Mut.*, 24 Cal. 4th at 921).

"California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied," based on a three-step "governmental interest test":

> [1] First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> [2] Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> [3] Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)).

If the court concludes that "the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679, 692 (9th Cir. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015)). If, however, the class claims "require adjudication under the laws of multiple states . . . plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate." *Id.* (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).

In sum, certification of a nationwide class requires a preliminary two-part analysis. First, the court applies the forum state's choice-of-law rules to determine the controlling substantive law. In California, that analysis is conducted using a three-step governmental interest test. Second, if the choice-of-law analysis only requires the court to apply one state's laws, the court's threshold inquiry ends and it proceeds to consider ordinary predominance questions. If not, the court must determine whether material differences between applicable states' laws exist such that common legal issues do not predominate.

Here, Plaintiffs have made no attempt to make this showing. *See Mazza*, 666 F.3d at 589 ("class action proponent bears the initial burden to show that California" law applies). Indeed, Plaintiffs do not even suggest what laws should govern their putative nationwide class claims for quasi-contract unjust enrichment and negligent failure to recall. *See generally*, Mot. Notwithstanding Plaintiffs' failure to carry their burden, the Court will proceed with the analysis out of an abundance of caution.

This action is tied to California only to the extent that Plaintiffs' claims are asserted on behalf of California class members. Although TBC sells STR tires in many, if not all the 50 states, TBC is a Delaware corporation whose principal place of business is in Florida. *See* FAC ¶ 7; TBC Answer ¶ 7. Dynamic is a Canadian corporation with its principal place of business in Canada. *See* FAC ¶ 8; Dynamic Answer ¶ 8. None of the Defendants designed or manufactured the STR tires in California. *See* Muise Decl. ¶¶ 2–3. Rather, Defendants' sole link to California is the fact that some class members purchased or acquired the STR tires in California. To be sure, this link is a "significant contact or significant aggregation of contacts" to the claims of each *California* class member, but it is not sufficient for class members who did not purchase or acquire their STR tires in California. *Wash. Mut.*, 24 Cal. 4th at 921.

Thus, California law can be applied on a nationwide basis only if California's interest in having its law applied outweighs the interests of other states. The Court concludes that it does not.

1    Under the first step of the governmental interest test, the Court must determine
2    whether there are material differences between various states' laws.  *See Mazza*, 666 F.3d
3    at 590–91.  Defendants have exhaustively detailed how the state laws regarding all of
4    Plaintiffs' nationwide class claims differ.  For example, California does not recognize
5    claims for unjust enrichment.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762
6    (9th Cir. 2015).  Instead, California construes claims for unjust enrichment as claims for
7    quasi-contract.  *Id.*  In Arizona, an unjust enrichment claim requires a showing that there
8    is no adequate remedy provided by law.  *See Wang Elec., Inc. v. Smoke Tree Resort, LLC*,
9    230 Ariz. 314, 318 (Ariz. Ct. App. 2012).  This requirement is absent under California law,
10   for example, where a claim for quasi-contract restitution "is permitted even if the party
11   inconsistently pleads a breach of contract claim . . . ."  *Rutherford Holdings, LLC v. Plaza
12   Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  In further contrast, Florida permits claims for
13   unjust enrichment only if a plaintiff directly conferred a benefit on the defendants.  *See Am.
14   Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007).

15   Differences also exist for Plaintiffs' breach of express warranty claims.  In addition
16   to the different reliance requirements for claims alleging breach of express warranty
17   outlined *supra* in Section C.2, states impose different requirements regarding notice.  For
18   example, California does not require buyers to give pre-litigation notice to sellers if they
19   did not deal with the sellers.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg.,
20   Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 1145, 1180 (C.D. Cal. 2010) (citing
21   *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61 (1963)).  In contrast, Texas requires
22   pre-litigation notice even as to remote buyers.  *See McKay v. Novartis Pharms. Corp.*, 751
23   F.3d 694, 706 (5th Cir. 2014) (construing Texas law).

24   Plaintiffs' implied warranty claims fare no better.  California requires vertical privity
25   between the plaintiffs and the defendants for a breach of the implied warranty of
26   merchantability.  *See Clemens*, 534 F.3d at 1023.  Arizona, however, dispenses with the
27   privity requirement for breaches of the implied warranties of workmanship and
28   habitability.  *See Richards v. Powercraft Homes*, 139 Ariz. 242, 244–45 (1984).

Finally, Plaintiffs' nationwide negligent failure to recall or retrofit claim is not viable depending on the state law applied.  California recognizes a duty to recall or retrofit if a government agency has ordered a recall or if there was a shift in industry standards.  *See Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 556 (1993); *Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 494 (1984).  Colorado, however, does not recognize a duty to retrofit—it only recognizes a post-sale duty to warn.  *See Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1452 (10th Cir. 1992) (citing *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992).

The Court did not list every difference above, but even from these limited examples, it is clear that the differences between jurisdictions are all material.  In *Mazza*, the Ninth Circuit concluded that the difference in scienter requirements between various state laws was material because the varying requirements "spell the differences between the success and failures of the claim."  *Mazza*, 666 F.3d at 591.  The same is true here.  For example, whether class plaintiffs purchased their tires directly from Defendants determines whether they will succeed on their quasi-contract claim under California law.  The Court therefore proceeds to the second step of the governmental interest test.

Under the second step, the Ninth Circuit has recognized that "[e]very state has an interest in having its law applied to its resident claimants."  *Mazza*, 666 F.3d 591–92 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (2001)).  Thus, "each state has a strong interest in applying its own consumer protection laws . . . ."  *Id.* at 592. This case concerns STR tire sales or acquisitions nationwide.  The Court can discern no reason why the rationale in *Mazza* would not apply here.  Thus, the Court finds that the second step of the governmental interest is met and a true conflict exists.

Under the third step of the governmental interest test, the Court determines whether foreign states' laws should be applied.  Again, *Mazza* dictates the outcome as to the final step.  In *Mazza*, the Ninth Circuit held that because the injury done to the class was the sale of the defective vehicle, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took

-29-

place." *Id.* at 594.  Here, Plaintiffs contend that the injury caused to the class members is the sale of the tire.  *See* Mot. at 12.  Under *Mazza*, the class members' claims must therefore be governed by the jurisdictions where their transactions occurred.

Because the Plaintiffs' nationwide class claims will require adjudication under the laws of multiple states, Plaintiffs must show that common questions predominate over individual legal issues.  *In re Hyundai*, 881 F.3d at 693.  Plaintiffs have not done so.  The significant number of material differences between the laws of multiple states precludes a finding that common questions predominate.  Accordingly, the Court **DENIES** Plaintiffs' motion to certify a nationwide class.

Plaintiffs also moved for a nationwide liability only class pursuant to Rule 23(c). Because their liability-only class is based on the same claims and legal theories as their broader proposed class, the Court also **DENIES** Plaintiffs' motion to certify a nationwide liability only class under Rule 23(c).

### b.    Arizona Class

Plaintiffs seek to certify an Arizona class alleging:  (1) violations of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 *et seq.*; (2) breach of express warranty, Ariz. Rev. Stat. §§ 47-2313 & 47-2A210; and (3) breach of implied warranty of merchantability, Ariz. Rev. Stat §§ 47-2314 & 47-2A212.  FAC ¶¶ 152–177.

### i.    Breach of Express Warranty

Under Arizona law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Ariz. Rev. Stat. § 47-2313(A)(1).   Express warranties are treated like ordinary contracts and interpreted according to general contract principles. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 22 (Ariz. Ct. App. 2006).  Yet, "any affirmation that forms the basis of an express warranty must be between the seller and the buyer."  *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1001 (D. Ariz. 2013).  In other words, a seller is not bound by an express

warranty unless "it was part of the basis of the bargain of a sales contract." *Flory*, 129, Ariz. at 581 (1981).

Arizona law, however, permits courts to re-characterize breach of express warranty claims as ordinary contract claims. *Id.* In *Flory*, the Arizona Supreme Court held that a mobile home manufacturer's express warranty was not available to the purchaser when the purchaser bought a mobile home from a third-party dealer. *Id.* at 580–81. The court also held that if the purchaser could show "consideration from the terms of the contract or by reliance on a presumption of consideration . . . the 'Manufacturer's Warranty' . . . is an enforceable contract." *Id.* at 581.

Here, Plaintiffs have not adequately demonstrated that common issues of fact and law predominate. In particular, because Arizona law limits express warranties to affirmations between the seller and the buyer, Plaintiffs must prove that each individual plaintiff either obtained the express warranty at issue directly from Defendants or that the warranties constituted an independent contract. Thus, the Court concludes that Plaintiffs have not met the predominance requirement for this claim.

### ii.   Breach of Implied Warranty

Arizona law provides that "a warranty that the goods shall be merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind." Ariz. Rev. Stat. § 47-2314. "Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty under the U.C.C. against a manufacturer." *Plagens*, 328 F. Supp. 2d at 1074 (D. Ariz. 2004) (citing *Flory*, 129 Ariz. at 579–80).

As with their express warranty claim, Plaintiffs fail to show that common issues predominate. Plaintiffs' class is defined as all individuals who purchased or acquired the STR tires, which includes individuals (like the named Plaintiffs) who did not purchase the tires directly from Defendants. *See* Mot. at 7. As a result, Plaintiffs' class claims require individual determinations regarding vertical privity and those determinations predominate

over common issues.  In light of the foregoing, the Court **DENIES** Plaintiffs' motion to certify an Arizona class.

### c.      California Class

Plaintiffs seek to certify a California class bringing claims under:  (1) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (2) the Unfair Competition Law, Cal. Bus & Prof. Code § 17200 *et seq.*; (3) the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) breach of express warranty, Cal. Com. Code §§ 2313, 10210; and (5) breach of implied warranty of merchantability, Cal. Com. Code §§ 2314, 10212.

### i.      Breach of Express Warranty

The California Commercial Code provides that express warranties are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which
> relates to the goods and becomes part of the basis of the bargain creates an
> express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain
> creates an express warranty that the goods shall conform to the description.

*Weinstat*, 180 Cal. App. 4th at 1227 (quoting Cal. Com. Code § 2313(1)(a) & (b)).  "To prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Id.* (quotations omitted).  "The statute . . . creates a presumption that the seller's affirmations go to the basis of the bargain."  *Id.*  The "basis of the bargain" includes "[a]ny affirmation, once made . . . unless there is a clear affirmative proof that the affirmation has been taken out of the agreement."  *Id.* at 1229 (quotations omitted).

As discussed above, under California law, a plaintiff asserting a breach of express warranty must stand in vertical contractual privity with the defendant—that is, the buyer and seller must be "in adjoining links of the distribution chain."  *Clemens*, 534 F.3d at 1023; *see also Burr v.*, 42 Cal. 2d at 695 (1954) ("The general rule is that privity of contract

is required in an action for breach of either express or implied warranty . . . ."). Two notable exceptions to this requirement are "cases involving foodstuffs" and cases where "the purchaser relied on representations made by the manufacturer in labels or advertising materials." *Id.* at 695–69.

Normally, claims for breach of express warranty under California law are amenable to class treatment because the advertisement exception to the privity requirement applies. In *In re ConAgra*, 90 F. Supp. 3d 919, and *Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014), for example, the common question of whether the defendants materially misrepresented their products on product packaging predominated and class treatment was appropriate. Here, however, named plaintiffs were not exposed to Defendants' purported representations on a uniform basis. Plaintiffs never saw any of Defendants' advertisements, packaging, or labels. Moreover, as discussed above, Hamilton, the proposed California class representative, would not be typical of the proposed California class, given that she never saw any advertisements or labels. *See* Def. Hamilton Depo. at 134:9 – 12; 134:3 – 9. Thus, litigation of this claim would require a case-by-base determination of whether the advertisement exception to the privity requirement applies. The Court therefore concludes that Plaintiffs have not met the predominance requirement for this claim.

### ii.    Breach of Implied Warranty

The California Commercial Code also "implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)). "The implied warranty 'provides for a minimum level of quality.'" *Id.* (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). Like an action for breach of an express warranty, a claim for breach of an implied warranty requires that the plaintiff be in vertical privity with the defendant.

1   *Clemens*, 534 F.3d at 1023.  The exceptions to privity discussed *supra*, however, do not

2   apply.  *Burr*, 24 Cal. 2d at 696.

3         Plaintiffs have not demonstrated that common issues of law and fact predominate

4   with this claim, given that each class member will be required to demonstrate that he or

5   she is in vertical privity with Defendants.  Moreover, as mentioned above, Hamilton did

6   not purchase or acquire the STR tires directly from TBC or Dynamic.  Rather, she obtained

7   the tires indirectly through her purchase of her trailer.  *See* Hamilton Decl. ¶ 4.  In light of

8   the foregoing, the Court **DENIES** Plaintiffs' motion to certify a California class.

9            **d.**    **Colorado Class**

10        Plaintiffs seek to certify a Colorado class based on three claims:  (1) violation of the

11  Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101 *et seq.*; (2) breach of express

12  warranty, Col. Rev. Stat. §§ 4-2-313 & 4-2.5-210; and (3) breach of the implied warranty

13  of merchantability, Col. Rev. Stat. §§ 4-2-313 & 4-2.5-212.

14           **i.**    **Colorado Consumer Protection Act**

15        The CCPA permits actions by "any person in a civil action for any claim against any

16  person who has engaged in or caused another to engage in any deceptive trade practice

17  listed in section 6-1-105 or 6-1-105.5." Col. Rev. Stat. § 6-1-113(1).  Colorado courts have

18  liberally construed the CCPA to serve its broad purpose and scope.  *Hall v. Walter*, 969

19  P.2d 224, 230 (Colo. Sup. Ct. 1998).

20        To prove a claim under the CCPA, a plaintiff must show:  "(1) that the defendant

21  engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred

22  in the course of defendant's business, vocation, or occupation; (3) that it significantly

23  impacts the public as actual or potential consumers of the defendant's goods, services, or

24  property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5)

25  that the challenged practice caused the plaintiff's injury." *Id.* at 235.  Although "[r]eliance

26  [on Defendant's representations] often provides the key causal link between a consumer's

27  injury and a defendant's deceptive practice," it is not strictly required.  *Garcia*, 263 P.3d

28  at 99–100.  Instead, Colorado law permits courts to "demonstrate ignorance or reliance on

a classwide basis, using circumstantial evidence that is common to the class." *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 466–67 (Colo. App. 2010) (citations omitted). Individualized evidence, however, can refute a classwide inference of causation. *Garcia*, 263 P.3d at 99–100. In particular, "evidence that a reasonable consumer would have made the same decision [to purchase], even if the information had been disclosed" will rebut a classwide inference of reliance. *Maxwell v. United Servs. Auto. Ass'n*, 342 P.3d 474, 484 (Colo. App. 2014).

Here, the only argument presented by Defendants applicable to the proposed Colorado class concerns reliance. Defendants contend that individual questions of reliance predominate. *See* Opp. at 7. Plaintiffs, however, present evidence supporting an inference of reliance in the form of a declaration by the representative Plaintiff. *See* Flowers Decl. ¶ 8 [Doc. # 70-10]. Flowers attests that he would not have purchased his trailer had he known of the alleged defect in the tires. It is a reasonable inference that Colorado class members would decline to purchase the STR tires in conjunction with the trailers had the alleged defect been disclosed, or at least demand a price reduction. Defendants fail to present any evidence to rebut that inference. There is no evidence that a "reasonable consumer" would nevertheless purchase a trailer equipped with the STR tires even if the alleged defect is disclosed. *See, e.g.*, *Maxwell*, 342 P.3d at 485 (defendant insurance company rebutted inference of reliance through expert testimony that some class members may have stayed with the insurance company out of loyalty or to avoid the hassle of buying multiple policies).

### ii.    Breach of Express and Implied Warranty

Under Colorado law, a claim for breach of express warranty requires a showing that (1) a warranty existed; (2) the defendant breached the warranty; (3) the breach proximately caused the losses claimed as damages; and (4) timely notice of the breach was given to defendant. *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 2d 948, 953 (D. Colo. 1997) (citing *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187 (Colo. 1984)). "An implied warranty of merchantability exists in all contracts for sales of goods

-35-

unless disclaimed." *Id.* at 957–58.  Express and implied warranty claims are essentially identical and are appropriately analyzed together when the same conduct caused the alleged breach.  *See In re ConAgra*, 90 F. Supp. 3d at 988 (citing *Haffner v. Stryker Corp.*, No. 14-CV-00186-RBJ, 2014 WL 4821107, at *6 (D. Colo. Sept. 29, 2014)).

Reliance and vertical privity are not required for a breach of express or implied warranty under Colorado law.  *See id.* (citing *Lutz Farms*, 948 F.2d at 645; *Hansen v. Mercy Hosp., Denver*, 40 Colo. App. 17, 18 (1977)).  Plaintiffs are still required, however, to prove causation.  *Reichhold Chems.*, 983 F. Supp. at 953.

Plaintiffs contend that common evidence can show that their losses were caused by the purported defect in the STR tires.  The Court agrees.  Under Colorado law, Plaintiffs may prove each element of a breach of warranty claim on a classwide basis.  The existence of a warranty, whether Defendants breached the warranty by providing a sub-par tire, and whether the class gave timely notice of the breach are all easily susceptible of classwide proof.  Similarly, whether the breach—*i.e.*, the presence of a defect in the STR tires and Defendants' failure to repair or replace the defective tires—proximately caused Plaintiffs' losses can also be proven on a classwide basis.  *See Wolin*, 617 F.3d at 1174.  Defendants do not directly address Plaintiffs' request to certify a Colorado class, but several of their generalized challenges are applicable here.[8]

First, Defendants contend that individualized factual issues predominate because Plaintiffs have not established that they can prove a common defect.  *See* Opp'n at 5.  But Plaintiffs need not prove the merits of their claim on a motion for class certification.  *See Wolin*, 617 F.3d at 1173.  The alleged injury—whether tread separation is a defect—is susceptible of classwide proof.  *See id.* at 1174 (distinguishing between warranty claim for repair or replacement of defective vehicles, which can be proven on a classwide basis, with

---

[8] Defendants' arguments regarding whether class members saw the warranty (*see* Opp'n at 7), or whether class members purchased the tires (*see* Opp'n at 9), for example, are not relevant here because Colorado law does not require reliance or privity.

warranty claim for repair or replacement of tire wear *caused* by a defective vehicle, which cannot be proven on a classwide basis).

Second, Defendants argue that it will be necessary to determine whether claims of each individual class member are time-barred. The Court disagrees. Plaintiffs' proposed class can be readily redefined to avoid all statute of limitations and discovery rule issues by, for example, limiting the class to all persons who purchased or acquired a STR tire within the applicable statute of limitations. *See* Colo. Rev. Stat. § 4-2-725(2) (three-year statute of limitations for warranty claims).

Finally, Defendants argue that damages are not capable of classwide proof. To satisfy the predominance requirement, Plaintiffs must present a damages model that is consistent with their liability case, and the Court "must conduct a rigorous analysis to determine whether that is so." *Comcast Corp.*, 569 U.S. at 35; *see Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability[.]") Here, Plaintiffs' damages model is consistent with their theory that Defendants are liable because the STR tires are inherently defective. Specifically, Plaintiffs' damages model seeks compensation based on the difference in value between the purportedly defective STR tires and the value of a non-defective tire.[9]

In light of the foregoing, the Court **GRANTS** Plaintiffs' motion to certify a Colorado class. Certification is granted with respect to class members who purchased or acquired STR tires after February 9, 2014.

### e.   Florida Class

Plaintiffs seek to certify a Florida class bringing claims under: (1) Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*; (2) breach of express

---

[9] To the extent Plaintiffs' damages model is based on Pearl's opinion that the STR tires have *no* value, the Court rejects that model. Even if the STR tires are defective by design or manufacture, class members get *some* value out of the tires even if the tires ultimately fail.

warranty, Fla Stat. §§ 672.313 & 680.21; and (3) breach of implied warranty of merchantability, Fla. Stat. §§ 672.314 & 680.212.

### i.     Deceptive and Unfair Trade Practices Act

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009) (quoting Fla. Stat. § 501.204(1)). A FDUTPA claim has three elements:   (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *Id.* Deceptive or unfair conduct is prescribed by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices." *Id.* (quoting Fla. Stat. § 501.203(3)(c)).

FDUTPA claims are governed by a "reasonable consumer" standard and proof of individual reliance by class members is generally not required. *See Office of the Attorney Gen. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. App. 2004). The underlying issue in a FDUTPA claim is "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* Thus, an individual plaintiff's state of mind is irrelevant to a FDUTPA claim. *See In re Mot. to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010). But the requirement that circumstances must be similar "necessitates inquiry into the context of the alleged offense." *Id.* As a result, a FDUTPA claim is sometimes susceptible of classwide proof if the circumstances of the class are the same. *Id.* (citing *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 704 (Fla. App. 2000).

Here, similar to Plaintiffs' proposed Colorado class, Plaintiffs' declarations suggest that a "reasonable consumer" would likely be deceived by Defendants' failure to disclose the alleged defect.   After all, any reasonable consumer would want to avoid a tread separation problem.  Although the exact circumstances of purchase may differ from class member to class member, the alleged concealment injures all Florida class members in a

similar manner—class members acquire a tire prone to tread separations and are injured the moment they acquire the tire.[10]   Thus, individual issues do not predominate and this claim is susceptible of classwide proof.

### ii.      Breach of Express Warranty

Under Florida law, "an express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction and on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. App. 1984) (citing *Royal Typewriter Co.*, 719 F.2d at 1100); *see also* Fla. Stat. § 672.313.

Florida courts appear to be split on whether breach of express warranty requires vertical privity.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d at 920 (N.D. Cal. 2018).  Some courts conclude that vertical privity is required because express warranty claims are contractual.  *See Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012).  Other courts decline to apply a privity requirement when the seller is unlikely to have knowledge of the manufacturer's product.  *See Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) (construing *Hoskins v. Jackson Grain Co.*, 63 So. 2d 514 (Fla. 1953)).

Here, Plaintiffs have not shown that common issues predominate under either line of cases.  If vertical privity is required, Plaintiffs will be unable to certify their Florida class for the same reason their California class fails; each class member will be required to demonstrate that he or she is in privity with Defendants and individual issues predominate.

If the Court applies the *Smith* line of cases, individual issues will still predominate. *Smith* relied on the Florida Supreme Court's decision in *Hoskins*, where the court held that

---

[10] One potential hurdle to Plaintiffs' Florida class claim is whether a "consumer acting reasonably" would inquire about the STR tires even if they do not purchase from a dealer. *Wyndham*, 869 So. 2d at 598.  This hurdle does not prevent certification at this stage, however, because Defendants did not present any evidence regarding the impact of this question on the identity and size of the class.  Plaintiffs, on the other hand, rely onDiaz's declaration stating that he would not have purchased the trailer with the STR tires if the defect had been disclosed.  Diaz Decl. ¶ 9 [Doc. # 70-9].

"it would be utterly unsound and unfair" to hold that the plaintiff "could not recover from the one who knew the origin and history of the [product], simply because the [plaintiff] got them direct from retailer who knew no more about [the product] than he." *Smith*, 663 F. Supp. 2d at 1343 (quoting *Hoskins*, 63 So. 2d at 515–16). In other words, *Smith* and *Hoskins* appear to stand for the proposition that vertical privity is unnecessary when the seller has as much knowledge about the product as the manufacturer. *Hoskins* does not help Plaintiffs. Whether each class members purchased their STR tires from a seller with sufficient knowledge about the tires (*i.e.*, a tire dealer) or acquired their STR tires from a seller without such knowledge (*i.e.*, a used car dealer or private trailer owner) is outcome determinative of Plaintiffs' express warranty claims under Florida law. Thus, each class member will be required to demonstrate either vertical privity or provide evidence regarding the general tire knowledge of their seller.

Under these circumstances, the Court concludes that Plaintiffs have not shown that common issues predominate as to their express warranty claims under Florida law.

### iii.    Breach of Implied Warranty

Florida law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314.

Similar to implied warranty claims under Arizona and California law, "plaintiff[s] cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa*, 904 So. 2d at 458 (Fla. App. 2005). Furthermore, Florida courts have also held that, in a claim for breach of implied warranty, reliance must be shown on an individualized basis. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008) (citing *Borrell-Bigby Elec. Co., Inc. v. United Nations, Inc.*, 385 So. 2d 713, 715 (Fla. App. 1980)).

Thus, Plaintiffs have not demonstrated that common issues of law and fact predominate with this claim, due to the requirements of vertical privity and individualized reliance. The Court therefore **DENIES** Plaintiffs' motion to certify a Florida class as to

their claims for breach of the express and implied warranty.   The Court **GRANTS** Plaintiffs' motion to certify a Florida class as to their claims under the FDUTPA.

### 2.      Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.   Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."   *Wolin*, 617 F.3d at 1175–76 (citation omitted).   In cases in which the plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, "[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."   *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotation and alteration omitted).

Here, each class member's claim involves a relatively small sum of money, and the litigation costs would render individual prosecution of claims prohibitive.   Moreover, common issues of fact and law predominate with respect to Plaintiffs' claims for the Colorado class and part of the Florida class.   Courts considering similar cases routinely find that the class action device is superior to other forms of adjudication.   *See, e.g.*, *Wolin*, 617 F.3d at 1175–76.

Defendants do not meaningfully challenge the superiority requirement and only argue that a class action is not superior because common issues do not predominate and the named Plaintiffs are atypical and inadequate.   As discussed *supra*, however, Plaintiffs have satisfied all Rule 23(a) and (b)(3) requirements for their Colorado class and part of their Florida class.   Accordingly, the Court finds that the superiority requirement is satisfied as to those two classes.

# VII.

## CONCLUSION

In light of the foregoing, Defendants' Motions to Strike are **DENIED**.  Plaintiffs' Motion for Class Certification is **GRANTED** as follows:

1.     The Court certifies the following Colorado Class with respect to Plaintiffs' claims under Colorado law:

> All persons who reside in Colorado who purchased or acquired a Power King Towmax STR trailer tire, from February 9, 2014 to the present.
>
> Excluded from the Class are (1) governmental entities; (2) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns; (3) the judicial officers and their immediate family members and associated court staff assigned to this case; and (4) those persons who have suffered personal injuries as a result of the alleged defects of the Power King Towmax STR trailer tire.

2.     The Court certifies the following Florida Class with respect to the Florida Deceptive and Unfair Trade Practices Act claim:

> All persons who reside in Florida who purchased or acquired a Power King Towmax STR trailer tire, from February 9, 2013 to the present.
>
> Excluded from the Class are (1) governmental entities; (2) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns; (3) the judicial officers and their immediate family members and associated court staff assigned to this case; and (4) those persons who

have suffered personal injuries as a result of the alleged defects of the Power King Towmax STR trailer tire.

3.    Plaintiffs' motion is otherwise **DENIED**;

4.    The Court certifies Sam Flowers as the representative of the Colorado Class and Nestor Diaz as representative of the Florida Class; and

5.    The Court certifies the law firm of Keller, Fishback & Jackson LLP as class counsel.

**IT IS SO ORDERED.**

DATED:  August 24, 2018

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE